UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Bosquez and Gary Larson,<br>as Trustees of the Minneapolis Painting Industry<br>Health and Welfare Fund, Minneapolis Local 386<br>Drywall Finishing Industry Pension Fund, Minneapolis<br>Painting Industry Pension Fund, Minneapolis Painting<br>Industry Vacation and Holiday Fund, Michael Gavanda<br>and James Smallen, as Trustees of the Minnesota<br>Finishing Trades Training Fund, and each of their<br>successors,<br><br>          Plaintiffs,<br><br>          v.<br><br>R & H Painting, Inc. and Gordon Raisanen,<br><br>          Defendants. | Civil No. 05-29 (JRT/FLN)<br><br><br><br><br><br><br><br><br><br><br><br>**REPORT AND<br>RECOMMENDATION** |

Amanda Cefalu, for Plaintiffs.
Gordon Raisanen, for Defendants.

**THIS MATTER** came before the undersigned United States Magistrate Judge on April 28, 2006 on Plaintiffs' Motion for Summary Judgement [#14] and Plaintiffs' Motion to Strike Defendants' Memorandum of Law and Other Responsive Documents [#24]. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. At the hearing on this matter, Plaintiffs withdrew their Motion to Strike Defendants' Memorandum of Law and Other Responsive Documents [#24]. For the reasons which follow, this Court recommends Plaintiff's Motion for Summary Judgment [#14] be **DENIED**.

### I. BACKGROUND

Plaintiffs are the trustees of the Minneapolis Painting Industry Fringe Benefit Funds. Defendant R & H Painting (hereinafter "R & H") is a painting company that was in business throughout the 1990's. R & H is currently in the process of winding up its affairs. (Affidavit of Heidi L. Raisanen (hereinafter "Raisanen Aff.") ¶ 1-2.) Defendant Gordon Raisanen (hereinafter "Raisanen") is the president and sole shareholder of R & H. (Raisanen Aff. ¶ 8.) Since R & H has been in business, R & H's General Manager Heidi Raisanen testified that R & H has "employed both non-union and union trades persons, and has made contributions to numerous painter's respective fringe funds without being a party to the working agreement of the particular local union." (Raisanen Aff. ¶ 6.)

On May 11, 1993, Raisanen signed a Collective Bargaining Agreement (hereinafter "CBA") between the Minnesota Painting and Wallcovering Employers Association and the Brotherhood of Painters and Allied Trades, Painters Local Union No. 386. (Affidavit of Jason Wolfe (hereinafter "Wolfe Aff.") ¶ 2; Ex. A.) Raisanen signed this agreement on behalf of R & H. (Wolfe Aff. Ex. A.) The title page of the agreement states that the agreement was effective between May 1, 1992 and April 30, 1995. (Raisanen Aff. Ex. A.) The Agreement further states

> this Agreement shall be binding on both parties beginning on May 1, 1992, up to and including April 30, 1995. Should either party desire any change at the expiration of this Agreement, it is agreed that sixty (60) days' [sic] notice prior to the termination of this Agreement is to be given The Minnesota Painting and Wallcovering Employers Association or the Union.

(Raisanen Aff., Ex. A, Art. XII, sec. 1.)

Since 1993, Painters Local 386 merged into District Council No. 82 and four CBAs have been entered into between the Union and the Minnesota Painting and Wallcovering Employers Association. (Wolfe. Aff. Ex. B-E.) Pursuant to the current CBA, an employer must make

contributions on behalf of the bargaining unit employees in the amounts set forth and agreed upon within the CBA.  Under the current CBA, the employer is required to make payments to the Trust Fund on the fifteenth day of each month following the month in which the employee performed work in the bargaining unit.  (Wolfe Aff. Ex. E, Art. XXVI(e).)  If an employer fails to make the payments required on or before the due date the employer must pay "liquidated damages in the amount of 10% of the sum due the Trust Fund."  (Raisanen Aff. Ex. A, Art. II, sec. 3(g).) Signatories to the CBA agree to give the Board of Trustees a right at any time to have a representative of the Board of Trustees conduct an audit of company records to determine whether an employer is in compliance with the CBA.  (Raisanen Aff. Ex. A Art. II Sec. 3(g).)

The Plaintiff Funds "operate a reporting system under which employers record the number of hours worked by each employee for whom contributions are due to the Funds upon paper fringe report forms."  (Wolfe Aff. ¶ 7.)  These reports are then mailed or sent by facsimile by the employer to Wilson-McShane Corporation, the Funds' Plan Administrator's office.  (Wolfe Aff. ¶ 7.)  The reports are then recorded and retained in the normal course of business.  (Wolfe Aff. ¶ 7.)

On March 6, 1995, Raisanen sent a document provided by Minneapolis Painters Local 386 entitled "Designation by Employer of Bargaining Representative" (hereinafter "form") to Bob Larson, the Business Agent of Minneapolis Painters Local 386, via the United States mail. (Raisanen Aff. ¶ 4; Ex. B.)  The form contains two statements.  Statement number 1 reads: "The undersigned employer designates the Minnesota Painting and Wallcovering Employers Association as its bargaining representative."  (Raisanen Aff. ¶ 4; Ex. B.)  Underneath this statement the employer is invited to check "Yes" or "No" accordingly.  (Raisanen Aff. Ex. B.)  Raisanen did not check either "Yes" or "No" on the form.  (Raisanen Aff. Ex. B.)  The second statements reads: "The

undersigned employer will represent itself in negotiations." (Raisanen Aff. Ex. B.) Underneath that statement, Raisanen placed an "X" next to Yes. (Raisanen Aff. Ex. B.) The name "R & H Painting" is directly above the signature line, which is signed by Raisanen. (Raisanen Aff. ¶ 4; Ex. B.) Raisanen also wrote an additional note on the form to Bob Larson. That note reads: "Bob, As we discussed a week ago Friday (24th), I better sign with the local I'm residing in this time around! (If they make a decent offer . . . !!) Regards, Gordy Raisanen." (Raisanen Aff. Ex. B.)

R & H submitted fringe benefit contribution report forms, reported hours for employees and remitted contributions to the Plaintiff Funds for employees in a consistent manner between 1993 and November 2004. (Wolfe Aff. ¶ 8.) The fringe benefit contribution rates due for each hour worked by R & H's employees have increased each year according to the CBA executed between Painters Local 386 and the Minnesota Painting and Wallcovering Employers Association. (Wolfe Aff. ¶ 9.) R & H consistently paid the increased fringe benefit contribution rates in accordance with the CBA effective at the time of payment. (Wolfe Aff. ¶ 9.) R & H submitted fringe benefit reports and contributions for the period of January 2004 through August 2004 and paid all contributions which R & H reported were due and owing to the Plaintiff Funds. (Wolfe Aff. ¶ 11.) R & H remitted union dues to the Wilson-McShane Corporation for January 2004 through August 2004. (Wolfe Aff. ¶ 11.) R & H failed to timely submit fringe benefit reports and contributions due and owing for the months of September, October and November, 2004. (Wolfe Aff. ¶ 11.)

In November 2004 the auditor for Plaintiff Funds requested that R & H "submit its' employment and payroll records to the Funds for audit and review for the purpose of ascertaining whether Defendant had properly complied with its obligations to remit contributions to the Funds." (Wolfe Aff. ¶ 12.) R & H submitted its records for audit and review for the period of January 2003

through October 2004. (Wolfe Aff. ¶ 13.) As a result of the audit, Plaintiffs discovered hours worked by various employees for which fringe benefit contribution payments had not been made. (Wolfe Aff. ¶ 14.) The total amount Plaintiffs determined to be due as a result of the audit was $13,093.45. (Wolfe Aff. ¶ 14, Ex. F.) Plaintiffs determined that the total amount due for liquidated damages for the audit period of January, 2003 through October 2004 was $1,309.35; that is, ten percent of the contributions due. (Wolfe Aff. ¶¶ 15-16, see Ex. E, Art. XXVI(e).)

On January 6, 2005, Plaintiffs filed this action seeking payment on the contributions determined to be owed as a result of the audit. After the service of the Summons and Complaint, R & H remitted $13,093.45 in contributions for the audit period of January 2003 through October 2004. (Wolfe Aff. ¶ 19.) R & H failed to pay the liquidated damages alleged by Plaintiffs. (Wolfe Aff. ¶ 19.) In addition, after service of the Summons and Complaint R & H submitted the fringe benefit report forms for November 2004 through March 2005; however, R & H failed to pay the contributions due as a result of those reports in a timely manner. (Wolfe Aff. ¶ 20.) According to the fringe benefit forms completed by R & H for November 2004 through March 2005, Plaintiffs allege that R & H owes Plaintiffs $10,868.96 in contributions and $1,033.24 in liquidated damages. (Wolfe Aff. ¶ 21.)

On June 23, 2005, R & H submitted a fringe benefit report form for April 2005 indicating that no employees performed work for which contributions were due in that month. (Wolfe Aff. ¶ 23, Ex. H.) On July 1, 2005, R & H submitted a fringe benefit report form for May 2005, indicating that 40 hours of work was performed and R & H submitted payment in the amount of $546.00 to Plaintiffs for the contributions due and owing in May 2005. (Wolfe Aff. ¶ 24.) R & H also reported and paid $43.20 for employee union dues. (Wolfe Aff. ¶ 24.) R & H did not remit any liquidated

damages to Plaintiffs, and Plaintiffs allege that R & H owes $54.60 in liquidated damages for the untimely submission of the contributions due for May 2005.  (Wolfe Aff. ¶ 24, Ex. I.)

On September 6, 2005, R & H submitted the fringe benefit report form for June 2005 and reported that $2,228.36 in contributions were due to Plaintiffs.  (Wolfe Aff. ¶ 25.)  R & H paid that amount to Plaintiffs.  R & H also reported and paid $176.31 for employee union dues.  (Wolfe Aff. ¶ 25.)  R & H did not pay the liquidated damages that Plaintiffs allege they are entitled to for the untimely submission of the June 2005 contributions, and Plaintiffs allege that the liquidated damages incurred for June 2005 amount to $222.84.  (Wolfe Aff. ¶ 25, Ex. J.)  R & H also submitted the fringe benefit report form for July 2005 on September 6, 2005.  (Wolfe Aff. ¶ 26.)  R & H reported $2,102.10 in contributions and paid that amount.  (Wolfe Aff. ¶ 26.)  R & H also paid and reported $166.32 in employee union dues.  (Wolfe Aff. ¶ 26.)  However, R & H did not pay the $210.21 in liquidated damages that Plaintiffs allege is due and owing as a result of R & H's failure to pay the contributions in a timely manner.  (Wolfe Aff. ¶ 26, Ex. K.)

On October 19, 2005, R & H submitted the fringe benefit report form for August 2005 and reported that $453.86 in contributions were due and R & H paid that amount.  (Wolfe Aff. ¶ 27.)  In addition, R & H paid $35.91 for employee union dues; however, R & H did not pay the $45.39 in liquidated damages that Plaintiffs allege is due and owing as a result of R & H's failure to pay the contributions in a timely manner.  (Wolfe Aff. ¶ 27, Ex. L.)

On October 16, 2005, R & H submitted the fringe benefit report form for September, 2005, reporting and paying $184.28 in contributions.  (Wolfe Aff. ¶ 28, Ex. M.)  On November 10, 2005, R & H submitted the fringe benefit report form for October 2005 and indicated that the company has not employed any employees in October 2005 for whom contributions were due and that any

subsequent billing for fringe benefit contributions should be discontinued. (Wolfe Aff. ¶ 29.) The total amount Plaintiffs allege that R & H owes is $13,744.59. (Wolfe Aff. ¶ 31.) In addition, Plaintiffs are seeking attorney fees and costs in the amount of $4,177.20. (Affidavit of Amanda R. Cefalu, ¶¶4-5.)

Plaintiffs now move for summary judgment on this matter, and request that the Court make a finding that Defendants are liable for all obligations arising under the CBA, including all fringe benefit contributions, liquidated damages and all reasonable attorneys fees and costs associated with this action. Raisanen argues that he cannot be held individually liable under the CBA because he signed the CBA as an officer of R & H and provided the necessary bonding requirements to prevent the CBA from becoming personally binding on him. R & H argues that it is not bound to the terms of the CBA because R & H unequivocally asserted its intention not to be bound by the CBA in its communication to the Union on March 6, 1995.

## II.   STANDARD OF REVIEW

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or based on undisputed facts. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-27 (1986). Therefore, summary judgment is appropriate when the moving party establishes that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 322-23. For these purposes, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, a court should construe all evidence in favor of the non-moving party. Id. at 255. Thus, summary judgment is appropriate when the court has viewed the facts and the inferences drawn from those facts, in the light most favorable to the non-moving party, and found no triable issue. See Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

### III. LEGAL ANALYSIS

**A. There Is A Genuine Issue Of Material Fact As to Whether Defendants Were Bound By the CBAs In Effect After the Expiration of the CBA Defendants Signed on May 11, 1993; Therefore, Plaintiffs' Summary Judgment Motion Must be Denied.**

Defendants deny that they are bound to the CBA, and argue that they unequivocally asserted their intention not to be bound by any subsequent CBAs by virtue of the communication sent by Raisanen to Bob Larson on March 6, 1995. Defendants argue that their subsequent conduct of making consistent contributions to the funds at rates consistent with the existing CBA is insufficient to support a finding that R & H is bound by the CBAs entered into after April 30, 1995.

Plaintiffs argue that, although Defendants did not execute a new CBA after April 30, 1995, Defendants have "consistently manifested their unequivocal intent to be bound to the [CBA]." (Pl.'s Mem. at 13.) Plaintiffs argue that Defendants have demonstrated their unequivocal intention to be bound to the CBA between the Union and the Minnesota Painting and Wallcovering Employers Association by engaging in conduct consistent with the terms of the CBA for over ten years. Plaintiffs argue that since R & H submitted fringe benefit contribution report forms, reported hours for employees, remitted union dues for its employees and remitted contributions to Plaintiffs for employees in a consistent manner between 1993 and November 2004, Defendants' have sufficiently demonstrated their unequivocal intention to be bound to the subsequent CBAs. In addition,

Plaintiffs note that the fringe benefit contribution rates due for each hour worked by R & H's employees has increased over the years as required by the subsequent CBAs. Plaintiffs argue that since R & H has consistently paid the increased fringe benefit contribution rates according to the CBA effective at the time of payment, this activity further demonstrates Defendants unequivocal intention to be bound by the subsequent CBAs.  Plaintiffs also note that R & H agreed to allow Plaintiffs' auditors access to R & H's records for an audit, and that this behavior further demonstrates Defendants' unequivocal intention to be bound by the subsequent CBAs.

In support of their argument, Plaintiffs rely on Gariup v. Birchler Ceiling & Interior Co., 777 F.2d 370, 373 (7th Cir.1985).  Plaintiffs' also rely on Carpenters & Joiners Welfare Fund v. Peter Dukenfield Co., 323 N.W.2d 45 (Minn.1982); however, Plaintiffs mistakenly state that this case is an Eighth Circuit case when it is actually a Minnesota Supreme Court case.  Therefore, neither the holding in Carpenters & Joiners nor the holding in Gariup v. Birchler Ceiling & Interior Co. is binding on this Court.  In addition, at the hearing on this motion, Plaintiffs' referenced New York State Teamsters Conference Pension and Retirement Fund v. Boening Brothers, 92 F.3d 127, 131-32 (2d Cir.1996) and Santa Monica Culinary Welfare Fund v. Miramar Hotel, 920 F.2d 1491, 1494 (9th Cir.1990) which, in their opinion, establishes Plaintiffs' rights to initiate a suit against an employer who has purported to contribute benefits to the Funds pursuant to a CBA, regardless of a signed contract.[1]

---

[1] The Court has reviewed these decisions and determined that these decisions do not support Plaintiffs' motion for summary judgment.  In both New York State Teamsters Conference Pension and Retirement Fund and Santa Monica Culinary Welfare Fund the defendant employer signed the CBA at issue but failed to sign the Trust Agreement that established and governed the Benefit Fund.  See New York State Teamsters Conference Pension and Retirement Fund, 92 F.3d at 128-29; Santa Monica Culinary Welfare Fund, 920 F.2d at 1492.  In both cases the defendant employer objected to the Fund's request for an audit, because

In <u>Gariup v. Birchler Ceiling & Interior Co.</u>, the Seventh Circuit held that "it is 'well established that a [CBA] is not dependent on the reduction to writing of the parties' intention to be bound,' rather, '[a]ll that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement.'" 777 F.2d 370, 373 (7th Cir.1985) (quoting <u>Capitol-Husting Co., Inc. v. NLRB</u>, 671 F.2d 237, 243 (7th Cir. 1982)). In a case discussing whether a CBA existed between a union and acompany, the Eighth Circuit stated "it 'is well established that technical rules of contract do not control whether a [CBA] has been reached.'" <u>National Labor Relations Board v. International Brotherhood of Electrical Workers, Local Union No. 25</u>, 748 F.2d 348, 350 (8th Cir.1984) (quoting <u>Pepsi-Cola Bottling Co. v. NLRB</u>, 659 F.2d 87, 89 (8th Cir.1981)). In that same case the Eighth Circuit further quoted <u>Capitol-Husting Co., Inc. v. NLRB</u> with approval, stating that "the crucial inquiry is whether there 'is conduct manifesting an intention to abide and be bound by the terms of an agreement.'" <u>National Labor Relations Board v. International Brotherhood of Electrical Workers, Local Union No. 25</u>, 748 F.2d at 350 (quoting <u>Capitol-Husting Co., Inc.</u>, 671 F.2d at 243.)

In the present case, considering all of the facts and inferences drawn from those facts in the

---

the Fund's audit powers in each case were only included in the Trust Agreement and not within the terms of the CBA. <u>See</u> 92 F.3d at 130; 920 F.2d at 1493. Both the Second Circuit and the Ninth Circuit concluded that the defendant employers were bound by the terms of the Trust Agreement insofar as it required the defendant employers to submit to an audit by the Funds. <u>See</u> 92 F.3d at 132-34; 920 F.2d at 1494. The Ninth Circuit concluded that "by making contributions to the Fund, [the defendant employer] intended its employees to receive benefits from the Fund [and] [o]nce [the defendant] intended its employees to be covered by the Fund, the Trust Agreement governing the Fund requires [the defendant] to be bound to its terms." 920 F.2d at 1494. However, both of these cases deal with defendant employers who signed the CBA at issue, and neither of these cases deals specifically with the situation where the defendant employer neither signed the CBA nor the trust agreement. Therefore, the holdings in these cases are not instructive in the present case, and will not be relied upon.

light most favorable to Defendants, it appears that there is a genuine issue of material fact as to whether Defendants engaged in "'conduct manifesting an intention to abide and be bound by the terms of'" the subsequent CBAs. Id. In the present case, unlike the defendant in Gariup, 777 F.2d at 374, Defendants sent Bob Larson, the business agent for Local 386, a document on March 6, 1995, in which Raisanen stated that he "better sign with the local [he was] residing in this time around." (Raisanen Aff. Ex. B.) As stated above, for the purposes of a summary judgment motion, a disputed fact is "material" if it must inevitably be resolved and the resolution will determine the outcome of the case; while a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In the present case, whether or not Defendants engaged in conduct that manifested an intent to be bound by the terms of the subsequent CBAs entered into by the Union and the Minnesota Painting and Wallcovering Association is a disputed fact. That disputed fact is material because it must inevitably be resolved and the resolution will determine the outcome of the case. Likewise, the evidence presented in the record so far is such that a reasonable jury could return a verdict that Defendants did not engage in conduct that evinced an intention to be bound by the terms of subsequent CBAs. Therefore, looking at all the facts and the inferences that can be drawn from those facts in the light most favorable to Defendants, there is a genuine issue of material fact as to whether Defendants engaged in "'conduct manifesting an intention to abide and be bound by the terms of'" the subsequent CBAs. National Labor Relations Board v. International Brotherhood of Electrical Workers, Local Union No. 25, 748 F.2d at 350 (quoting Capitol-Husting Co., Inc., 671 F.2d at 243.) As such, the Court recommends that Plaintiff's motion for summary judgment [#14] be **DENIED**.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiffs' Motion for Summary Judgement [#14] be **DENIED**.


DATED: June 22, 2006                           s/ *Franklin L. Noel*
                                                                                                    FRANKLIN L. NOEL
                                                                                                    United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 12, 2006**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 12, 2006,** a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.