UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| JOHN BOSQUEZ and GARY LARSON, as Trustees of the Minneapolis Painting Industry Health & Welfare Fund, Minneapolis Local 386 Drywall Finishing Industry Pension Fund, Minneapolis Painting Industry Pension Fund, and Minneapolis Painting Industry Vacation and Holiday Fund; and MICHAEL GAVANDA and JAMES SMALLEN as Trustees of the Minnesota Finishing Trades Training Fund; and each of their successors;<br><br>                           Plaintiffs,<br><br>v.<br><br>R & H PAINTING and GORDON RAISANEN,<br><br>                           Defendants. | Civil No. 05-29 (JRT/FLN)<br><br><br><br><br><br><br><br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Amanda R. Cefalu, **MCGRANN SHEA ANDERSON CARNIVAL STRAUGHN & LAMB, CHTD**, 800 Nicollet Mall, Suite 2600, Minneapolis, MN 55402-7035, for plaintiffs.

Gordon P. Raisanen, **RAISANEN & ASSOCIATES LAW FIRM, LTD**, 15725 United States Highway 12 Southwest, Cokato, MN 55321, for defendants.

Plaintiffs filed this lawsuit against defendants R & H Painting, Inc. and Gordon Raisanen. Plaintiffs are trustees of the Minneapolis Painting Industry Fringe Benefit Funds (the "Funds"), and allege that defendants are liable for unpaid fringe benefit contributions, which should have been made to plaintiffs for employees performing work covered by a Collective Bargaining Agreement. In a Report and Recommendation dated

June 22, 2006, United States Magistrate Judge Franklin L. Noel recommended denying plaintiffs' Motion for Summary Judgment.

This matter is now before the Court on plaintiffs' objections to the Magistrate Judge's Report and Recommendation.  The Court conducted a de novo review of defendant's objections pursuant to 28 U.S.C. § 636(b)(1)(C) and D. Minn. LR 72.2(b).  As explained below, the Court overrules plaintiffs' objections, and adopts the Report and Recommendation of the Magistrate Judge.

## BACKGROUND

Plaintiffs are the trustees of the Minneapolis Painting Industry Fringe Benefit Funds.  Defendant R & H Painting (hereinafter "R & H") is a painting company that was in business throughout the 1990's.  R & H is currently in the process of winding up its affairs.  Defendant Gordon Raisanen is the president and sole shareholder of R & H.  Since R & H has been in business, R & H's General Manager Heidi Raisanen testified that R & H has "employed both non-union and union trades persons, and has made contributions to numerous painter's respective fringe funds without being a party to the working agreement of the particular local union." (Raisanen Aff. ¶ 6.)

On May 11, 1993, Raisanen signed a Collective Bargaining Agreement (hereinafter "CBA") between the Minnesota Painting and Wallcovering Employers Association and the Brotherhood of Painters and Allied Trades, Painters Local Union No. 386.  Raisanen signed this agreement on behalf of R & H.  The title page of the agreement states that the agreement was effective between May 1, 1992 and April 30, 1995.  The Agreement further states:

>this Agreement shall be binding on both parties beginning on May 1, 1992, up to and including April 30, 1995. Should either party desire any change at the expiration of this Agreement, it is agreed that sixty (60) days' notice prior to the termination of this Agreement is to be given The Minnesota Painting and Wallcovering Employers Association or the Union.

(Raisanen Aff., Ex. A, Art. XII, sec. 1.)

Since 1993, Painters Local 386 merged into District Council No. 82 and four CBAs have been entered into between the Union and the Minnesota Painting and Wallcovering Employers Association. Pursuant to the current CBA, an employer must make contributions on behalf of the bargaining unit employees in the amounts set forth and agreed upon within the CBA. Under the current CBA, the employer is required to make payments to the Trust Fund on the fifteenth day of each month following the month in which the employee performed work in the bargaining unit. If an employer fails to make the payments required on or before the due date the employer must pay "liquidated damages in the amount of 10% of the sum due the Trust Fund." (Raisanen Aff. Ex. A, Art. II, sec. 3(g).) Signatories to the CBA agree to give the Board of Trustees a right at any time to have a representative of the Board of Trustees conduct an audit of company records to determine whether an employer is in compliance with the CBA.

On March 6, 1995, Raisanen sent a form provided by Minneapolis Painters Local 386 entitled "Designation by Employer of Bargaining Representative" to Bob Larson, the Business Agent of Minneapolis Painters Local 386, via the United States mail. The form contains two statements. Statement number 1 reads: "The undersigned employer designates the Minnesota Painting and Wallcovering Employers Association as its bargaining representative." (Raisanen Aff. ¶ 4; Ex. B.) Underneath this statement the employer is invited to check "Yes" or "No" accordingly. Raisanen did not check either

- 3 -

"Yes" or "No" on the form.  The second statement reads: "The undersigned employer will represent itself in negotiations." (Raisanen Aff. Ex. B.) Underneath that statement, Raisanen placed an "X" next to Yes.  The name "R & H Painting" is directly above the signature line, which is signed by Raisanen.  Raisanen also wrote an additional note on the form to Bob Larson.  That note reads: "Bob, As we discussed a week ago Friday (24th), I better sign with the local I'm residing in this time around! (If they make a decent offer . . . !!) Regards, Gordy Raisanen." (Raisanen Aff. Ex. B.)

   R & H submitted fringe benefit contribution report forms, reported hours for employees and remitted contributions to the Funds for employees in a consistent manner between 1993 and November 2004.  The fringe benefit contribution rates due for each hour worked by R & H's employees have increased each year according to the CBA executed between Painters Local 386 and the Minnesota Painting and Wallcovering Employers Association.  R & H consistently paid the increased fringe benefit contribution rates in accordance with the CBA effective at the time of payment.  R & H submitted fringe benefit reports and contributions for the period of January 2004 through August 2004 and paid all contributions that R & H reported were due and owing to the Funds.  R & H remitted union dues for January 2004 through August 2004.  R & H failed to timely submit fringe benefit reports and contributions due and owing for the months of September, October, and November, 2004.

   In November 2004 the auditor for the Funds requested that R & H "submit its' employment and payroll records to the Funds for audit and review for the purpose of ascertaining whether Defendant had properly complied with its obligations to remit contributions to the Funds." (Wolfe Aff. ¶ 12.)  R & H submitted its records for audit

and review for the period of January 2003 through October 2004. As a result of the audit, plaintiffs discovered hours worked by various employees for which fringe benefit contribution payments had not been made. The total amount plaintiffs determined to be due as a result of the audit was $13,093.45. Plaintiffs determined that the total amount due for liquidated damages for the audit period of January 2003 through October 2004 was $1,309.35; that is, ten percent of the contributions due.

On January 6, 2005, plaintiffs filed this action seeking payment on the contributions determined to be owed as a result of the audit. After the service of the Summons and Complaint, R & H remitted $13,093.45 in contributions for the audit period of January 2003 through October 2004. R & H failed to pay the liquidated damages alleged by plaintiffs. In addition, after service of the Summons and Complaint R & H submitted the fringe benefit report forms for November 2004 through March 2005; however, R & H failed to pay the contributions due as a result of those reports in a timely manner. According to the fringe benefit forms completed by R & H for November 2004 through March 2005, plaintiffs allege that R & H owes plaintiffs $10,868.96 in contributions and $1,033.24 in liquidated damages.

Since plaintiffs filed this action, R & H continued to submit fringe benefit forms and pay contributions accordingly. However, plaintiffs allege that defendants failed to pay liquidated damages for late payment of these contributions. For the period of April 2005 through October 2005, plaintiffs allege that R & H owes $533.04 in liquidated damages.

The total amount Plaintiffs allege that R & H owes is $13,744.59. In addition, plaintiffs are seeking attorney fees and costs in the amount of $4,177.20.

## ANALYSIS

### I.  STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that there is no genuine issue of material fact and the moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When considering a motion for summary judgment, the moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d 1076, 1077 (8th Cir. 1980).  However, the nonmoving party may not merely rest upon allegations or denials in its pleadings, but it must set forth specific facts by affidavits or otherwise show that there is a genuine issue for trial.  *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002).

### II.  PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATION

The Magistrate Judge concluded that a genuine issue of material fact existed as to whether or not defendants engaged in conduct that manifested intent to be bound by the

terms of the subsequent CBAs entered into by the Union and the Minnesota Painting and Wallcovering Association. In the objection, plaintiffs argue that they are entitled to summary judgment because defendants failed to produce sufficient evidence to create a genuine issue of material fact on whether defendants intended to be bound by the CBAs.

To determine whether a collective bargaining agreement has been reached, the crucial inquiry is whether there is "conduct manifesting an intention to abide and be bound by the terms of an agreement." *NLRB v. Int'l Bhd. of Elec. Workers, Local Union No. 22*, 748 F.2d 348, 350 (8th Cir. 1984). Defendants deny that they are bound to the CBAs, and point to the communication sent by Raisanen to Bob Larson on March 6, 1995. In that communication, Raisanen checks the box indicating that, "The undersigned employer will represent itself in negotiations." (Raisanen Aff. Ex. B.) Raisanen also added a note stating, "Bob, As we discussed a week ago Friday (24th), I better sign with the local I'm residing in this time around! (If they make a decent offer . . . !!) Regards, Gordy Raisanen." *Id.*

Plaintiffs argue that defendants have demonstrated their intention to be bound by engaging in conduct consistent with the terms of the CBA for over ten years. Plaintiffs emphasize that even after the communication sent on March 6, 1995, plaintiffs continued to submit remittance reports, pay contributions to the Funds, hire union employees, pay union dues in accordance with the CBA, and submit to audits performed according to the CBA.

Plaintiffs argue that defendants' conduct is sufficient as a matter of law to establish defendants' intent to be bound by the CBA. When there is no evidence to rebut the conclusion to be drawn from a defendant's course of conduct, the course of conduct

can be sufficient as a matter of law to show intent to be bound by a CBA. *See, e.g.*, *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988) ("Employers may adopt a collective bargaining agreement by a course of conduct."). But here, defendants may rely on the March 6, 1995 communication in which defendants state that they will represent themselves in negotiations. The Court agrees with the Magistrate Judge that the March 6, 1995 communication is sufficient to create a genuine issue of material fact on defendants' intent to be bound by the CBA.

Accordingly, plaintiffs' motion for summary judgment is denied.

This case will be placed on the Court's next available trial calendar.

### ORDER

Based on the foregoing, all the records, files, and proceedings herein, the Court **OVERRULES** plaintiffs' objections [Docket No. 36] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 35]. Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment [Docket No. 14] is **DENIED**.

DATED:   September 7, 2006  
at Minneapolis, Minnesota.

s/ John R. Tunheim  
JOHN R. TUNHEIM  
United States District Judge